IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VALERIE ADAME,
       Plaintiff,

                                    6:16-cv-1761-PK
                                    FINDINGS AND
                                    RECOMMENDATION

v.


NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

---

PAPAK, Magistrate Judge:

       Plaintiff Valerie Adame filed this action on September 3, 2016, seeking judicial review of the Commissioner of Social Security's final decision denying her application for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). ECF No. 1. This court has jurisdiction over plaintiff's action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). I have considered all of the

Page 1 – FINDINGS AND RECOMMENDATION

parties' briefing and the relevant evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision should be AFFIRMED and this case should be DISMISSED.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, an administrative law judge ("ALJ") considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation proceeds to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140–41; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to

perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1509, 404.1520(c), 416.909, 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153–54). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85-28, *available at* 1985 WL 56856).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, Subpt. P, App. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all

the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, *available at* 1996 WL 374184.

At the fourth step, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g),

416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet his burden at the fifth step. *See id.*; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The court may not substitute its judgment for that of the Commissioner. *See id.* (citing *Robbins*, 466 F.3d at 882); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 1989) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

///

## SUMMARY OF ADMINISTRATIVE RECORD[1]

Born in January 1958, Adame was 54 years old on her amended alleged onset date of May 1, 2012. Tr. 29–30, 68, 78. Adame is a high school graduate and has past relevant work experience as a legal clerk and bookkeeper. Tr. 215–20, 276. On December 14, 2012, Adame filed Title II and Title XVI applications for disability. Tr. 176–86. She alleged disability in her initial applications due to osteoarthritis and affective/mood disorders (depression). Tr. 68, 78, 88–89. After her applications were denied initially and upon reconsideration, Adame requested a hearing before an ALJ. Tr. 5, 11, 68,78, 88–89, 91, 105, 119–20.

### I. The Medical Record

Neither party supplied a summary of the medical record in this case. The Court, therefore, has summarized the relevant medical evidence in chronological order, followed by the opinions of the Social Security Administration's consultative examiners and the state agency medical consultants.

### A. Treating Physician Lynn Morris, M.D.

Lynn Morris, M.D., served as Adame's primary care provider from May 2012 through January 2014. She saw Adame frequently and consistently diagnosed: depression; back pain; osteoarthritis; obesity, (advising Adame that exercise and dieting would help lower her weight and reduce her pain levels); essential hypertension, benign; and unspecified hyperlipidemia. Tr. 280, 282, 284, 297–98, 302, 305, 309. Notably, during a May 2012 exam, Adame presented with

---

[1] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record, and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as ECF No. 9. The record before the Court constitutes nearly 500 pages, with some duplicative documents. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

lower back pain. Tr. 309. Additionally, she "ran out of refills" for her Zoloft and reported "feeling depressed, hopeless, and having crying spells." *Id.* She also reported having "suicidal thoughts but no suicidal plans" and "trouble sleeping." *Id.*

*1. Dr. Morris' Referrals*

Dr. Morris referred Adame to Mark Fletcher, M.D., in September 2012. Adame presented as a 54-year-old morbidly obese female with complaints of lower back pain, bilateral hip pain, and left knee pain. Tr. 271. She reported her pain level as "5/10," "10/10" at its worst, and a body mass index ("BMI") of 52. *Id.* On her physical exam, Dr. Fletcher documented Adame was awake, alert, oriented, and in no acute distress. Tr. 272. Dr. Fletcher diagnosed back pain and osteoarthritis that caused "severe lower back pain[.]" Tr. 273. He attributed her back pain to her obesity and referred her back to her primary care provider for consideration of physical therapy and exercise instruction. *Id.*

Dr. Morris also referred Adame for a sleep medicine consultation. In November 2013, Adame met with Katsufumi Nishida, M.D., to assess suspected sleep apnea. Tr. 476–78. Dr. Nishida scheduled a sleep test, which confirmed "moderate-to-severe obstructive sleep apnea" and Adame began CPAP treatment thereafter. Tr. 479–82. Three months later, at a follow up appointment at the end of March 2014, Adame reported she was "sleep[ing] better with CPAP and ha[d] more energy during the daytime[.]" Tr. 483. Dr. Nishida diagnosed moderate obstructive sleep apnea "with good compliance and treatment efficacy." *Id.* He recommended she continue using the CPAP and highly encouraged weight reduction. Tr. 484.

///

///

**B. Treating Physician Derek Davenport, M.D.**

In January 2104, Adame met twice with Derek Davenport, M.D.: the first appointment, a new patient visit where Dr. Davenport became her primary care provider; and the second, a follow-up appointment a few weeks later. Tr. 435, 439. Dr. Davenport reviewed Adame's patient history and noted she had no current complaints or concerns. Tr. 435. Dr. Davenport confirmed Dr. Morris' previous diagnoses and assessed several new conditions: hyperlipidemia; hypertension; major recurrent depression; hepatotoxicity; osteoarthritis in her hips and knees; sleep apnea; cataract; impaired fasting glucose; and right leg cellulitis. Tr. 436–37, 441–42.

In March 2014, Adame presented to Dr. Davenport with head and knee pain. Tr. 425. She reported taking Tylenol and Motrin sporadically—last taking Motrin one-to-two weeks prior. *Id.* Dr. Davenport diagnosed: osteoarthritis in Adame's hips; osteoarthritis in her knees; and hypertension. Tr. 426–27. In May 2014, Adame presented with edema (swelling) of her left leg. Tr. 420. She reported that it worsened during the day and improved at night. *Id.* Dr. Davenport prescribed a compression stocking and counseled her to follow up in two weeks. Tr. 421. It appears from a review of the record the edema resolved. *See* Tr. 419 ("IMPRESSION: No evidence of left leg deep venous thrombosis.") (Capitalization in original).

In August 2014, Dr. Davenport evaluated Adame for chronic neck pain, which she reported she had "for years." Tr. 403. Adame also complained of having "a hard time sleeping on [her] shoulder[.]" *Id.* She also complained of knee pain. *Id.* Dr. Davenport diagnosed: chronic neck pain; right shoulder pain; osteoarthritis in her knees; and hyperlipidemia. About a month later, Adame presented again with reports of neck, back, and shoulder pain. Tr. 395. She reported improvements, however, in her shoulder and back pain following five sessions of

physical therapy; although Dr. Davenport noted that she was "not doing her [prescribed] home exercise program." *Id.* Adame reported she was not taking any pain medications and stated she did "not like taking medications." *Id.* Dr. Davenport diagnosed: right shoulder pain; chronic neck pain; hypertension (essentially benign); and lumbar back pain. Tr. 397.

In October 2014, at follow up appointment to check on her high blood pressure and reevaluate her shoulder and neck pain, physical therapy appeared to have increased Adame's range of motion in her right shoulder; her neck had also improved. Tr. 390. Although Adame reported she had been compliant with her medications, Dr. Davenport noted she was "not following a specific diet." *Id.* Dr. Davenport again noted that she was not taking pain medications, but he noted she did take ibuprofen when necessary. *Id.* He diagnosed: hypertension; right shoulder pain; hepatoxicity (resolved); and hyperlipidemia. Tr. 393.[2]

In January 2015, Dr. Davenport completed a "Medical Statement Regarding Physical Abilities and Limitations." Tr. 489–91. He noted that Adame suffered from osteoarthritis of her hips and knees, and opined that she: (1) could stand continuously for a maximum of 30 minutes at any one time and for a maximum of four hours in the context of an eight hour work day; (2) could sit continuously for a maximum of 30 minutes at any one time and for a maximum of two hours in the context of an eight hour work day; (3) could lift 20 pounds occasionally and ten pounds frequently; (4) could occasionally bend and stoop; (5) could frequently balance; (6) could

---

[2] In November 2014, Adame met with qualified mental health professionals ("QMHP") Jennifer Blake and Ruth Wood. Beyond generally mentioning "depression," Adame's briefing does not challenge the ALJ's weighing of the mental health medical evidence. As such, the Court notes that both QMHPs Blake and Wood diagnosed Adame with moderate, single major depressive disorder and global assessment of functioning ("GAF") score of 50. Tr. 446, 460–61. Additionally, Adame met with QMHP Wood frequently through the end of December 2014, and she completed a "Medical Statement Regarding Depression with Anxiety" check-box-like form in February 2015. *See* Tr. 462, 466, 467, 468–75, 485–88.

constantly use fine and gross manipulation in both hands as well as raise her left arm over her shoulder; however, she could only occasionally raise her right arm over her shoulder; and (7) could constantly operate a motor vehicle. Tr. 489–90. Additionally, he noted that Adame suffered from moderate-to-severe pain, although he did not believe her physical conditions would cause her to miss work. *Id.* Dr. Davenport did opine, however, that Adame's physical conditions would cause her to struggle with being on time for work and would necessitate additional breaks or the need to leave early, and he opined that her physical conditions would cause her to be anywhere from 20-to-30% less productive than her peers. Tr. 490–91. Finally, he noted that she took Tylenol and Motrin, and that they did not cause any side effects. Tr. 491.

### C. Social Security Administration and State Agency Doctors

*1. Consultative Examinations*

In March 2013, Ryan Scott, Ph. D., conducted a psychodiagnostic evaluation of Adame on referral from Disability Determination Services ("DDS"). Tr. 275–78. In the portion of his report titled "Discussion & Impressions," Dr. Scott opined that Adame appeared to meet the criteria for: "major depressive disorder, recurrent, moderate" and "generalized anxiety disorder." Tr. 278. Based on mental status testing, he also found that "it would not be expected that Ms. Adame would have difficulty remembering or carrying out detailed instructions with more than a minor [limitation]."

In September 2013, Andrea Marshall, M.D., conducted a consultative examination on Adame. Tr. 381–86. Adame reported complaints of pain in her knees, back, and hips, increasing in severity since 2011. Tr. 381. She reported neck pain since "she was about 20 years old." *Id.* Regarding her obesity, Adame reported she was unable to "do any exercise because of body pain in her knees, hip, and lower back which restrict her activity." *Id.* She also reported hypertension

and reported she was compliant with her medication. Tr. 382. Dr. Marshall diagnosed arthritis, morbid obesity, and hypertension that did not appear to be controlled on current medication. Tr. 385. Dr. Marshall opined that Adame: (1) could stand and walk up to six hours of an eight hour workday; (2) could sit without limitation; (3) could lift and carry without limitation; (4) could frequently climb, balance, stoop, kneel, crouch, and crawl; (5) had no limitations reaching, handling, fingering, or feeling. *Id.*

*2. State Agency Consultants*

State agency consultants Robert Henry, Ph.D., and Linda L. Jensen. M.D., evaluated Adame's medical records at the initial application stage and came to the following conclusions. Tr. 68–77, 78–87, 88–90. Dr. Henry assessed that Adame suffered from arthritis and depression. Tr. 68, 78. Dr. Henry also found Adame had mild restrictions in: activities of daily living; maintaining social functioning; maintaining concentration, persistence, and pace; and had not experienced any recent episodes of decompensation. Tr. 73, 83. In crafting an RFC, Dr. Jensen opined that Adame: (1) could stand or walk for two hours of an eight hour work day; (2) could sit for "[a]bout [six] hours" of an eight hour work day; (3) could lift twenty pounds occasionally and ten pounds frequently; (4) could occasionally climb ramps, stairs, ladders, ropes, scaffolds; (5) could occasionally balance, stoop, kneel, crouch and crawl; and (6) had no manipulative limitations. Tr. 75, 85.

On reconsideration, Kordell N. Kennemer, Psy.D., and Neal E. Berner, M.D., evaluated Adame's medical records. Tr. 91–104, 105–18, 119–21. Dr. Kennemer assessed that Adame suffered from osteoarthritis and allied disorder, obesity, and affective disorder. Tr. 98, 112. Similar to Dr. Henry's finding, Dr. Kennemer opined Adame had mild restrictions in: activities of daily living; maintaining social functioning; maintaining concentration, persistence, and pace; and

had not experienced any recent episodes of decompensation. Tr. 99, 113. Dr. Berner, however, assessed a slightly more restrictive RFC than Dr. Jensen. He opined that Adame: (1) could stand or walk for two hours of an eight hour work day; (2) could sit for "[a]bout [six] hours of an eight hour work day; (3) could lift twenty pounds occasionally and ten pounds frequently. Tr. 100–102, 114–15. Although he found no restrictions in climbing ramps or stairs, he opined Adame could never climb ladders, ropes or scaffolds. *Id.* Additionally, he also found that Adame had visual limitations in her right eye. Tr. 100–101,115–16.

## I.   The Administrative Hearing

On February 12, 2015, the ALJ held a hearing, at which Adame testified and was represented by counsel; a vocational expert ("VE") also testified. Tr. 26–67. The ALJ asked the VE to:

> Assume a hypothetical individual of the claimant's age, education, with the past work experience [as a legal secretary and bookkeeper and is further limited to] lift[ing 20 pounds occasionally and frequently lifting] 10; walk[ing two hours of an eight hour workday and sitting] six with normal breaks. This person must never climb ladders, ropes, or scaffolds. And they are limited to no more than occasional stooping; kneeling; crouching; and crawling. And they must avoid work in an environment that requires close or fine depth reception . . . Sir, would the hypothetical individual be able to perform that past work?

Tr. 52. After some discussion correcting Adame's age to comply with her amended alleged onset date, the VE answered in the affirmative that such an individual would be able perform past relevant work as a legal secretary and a bookkeeper, as described by the Dictionary of Occupational Titles. Tr. 55–56.

On March 6, 2015, the ALJ issued a decision finding Adame not disabled within the meaning of the Act. Tr. 8–25. That decision became the final decision of the Commissioner on

July 8, 2016, when the Appeals Council denied Adame's subsequent request for review. Tr. 1–4; *see, e.g., Sims v. Apfel,* 530 U.S. 103, 107 (2000). Adame now appeals to this Court for review of the Commissioner's final decision. ECF No. 1.

## SUMMARY OF ALJ FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found that Adame had met the insured status requirements of the Act through December 31, 2015, and had not engaged in substantial gainful activity at any time during the period since her alleged onset date of July 1, 2011.[3] Tr. 13.

At step two, the ALJ found that Adame had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; osteoarthritis of the hips and knees; morbid obesity; and right eye vision loss. Tr. 14.

At step three, the ALJ found that Adame's impairments, considered either individually or in combination, did not meet or equal the requirements of a listed impairment. 20 C.F.R. § 404, Subpt P, App. 1; Tr. 15.

Because she did not establish disability at step three, the ALJ continued to evaluate how Adame's impairments affected her ability to work. The ALJ resolved that Adame had the residual functional capacity to:

> perform a range of sedentary work . . . except she can lift/carry 20 pounds occasionally, and up to ten pounds frequently. She can sit 6 hours, and stand/walk 2 hours in an 8-hour workday (with normal breaks). She must avoid climbing ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch, or crawl. She must avoid tasks that require close, fine depth perception.

---

[3] The ALJ failed to amend the onset date to the May 1, 2012, as requested by Adame. Tr. 13, 30. As discussed in Section II of this Findings and Recommendation ("F&R"), the Court should find the error harmless.

Tr. 15. At step four, the ALJ found that Adame remained capable of performing her past relevant work as a legal clerk and bookkeeper. Tr. 19.

Because the ALJ found Adame could return to her past work at step four, she did not proceed to step five of the sequential evaluation process.

## ANALYSIS

Adame argues that the ALJ erred in: (1) assessing her credibility; (2) failing to acknowledge her amended onset date; (3) failing to find chronic pain and obstructive sleep apnea severe at step two; and (4) failing to account for all of her impairments in crafting her RFC.

### I. Credibility

As noted, Adame challenges the ALJ's credibility determination. Pl.'s Br. at 8–14. As a preliminary matter, Adame asserts that SSR 16-3p, which superseded SSR 96-7p in March 2016 and eliminated the term "credibility" from symptom testimony evaluation, controls this Court's review of the ALJ's decision. Pl.'s Br. at 8–10; (citing SSR 16-3p, *available at* 2016 WL 1119029 and SSR 96-7p, *available at* 1996 WL 374186). The Commissioner responds that "the ALJ did not evaluate Adame's credibility, but rather the credibility of her statements, finding that ' [Adame's] statements . . . are not entirely credible . . . .'" Def.'s Br. at 6 (quoting Tr. 16.). The Court declines to resolve the parties' dispute because SSR 16-3p does not apply to ALJ decisions prior to March 16, 2016. *Smith v. Colvin*, No. 6:15-cv-01625-MA, 2017 WL 388814, at *4 (D. Or. Jan. 27, 2017) (declining to apply 16-3p retroactively); *see also Bowlin v. Colvin*, No. 6:15-cv-01454-PK, 2016 WL 5339591, at *8 (D. Or. Aug. 18, 2016) (same), *report and recommendation adopted*, No. 6:15-cv-01454-PK, 2016 WL 5339578 (D. Or. Sept. 21, 2016). Here, the ALJ's decision was issued on March 6, 2015. Consequently, the ALJ here was permitted to engage "ordinary techniques of credibility evaluation . . . [such as] respond[ing] favorably to conservative treatment including

physical therapy and the use of anti-inflammatory medication[.]" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (citation omitted).

The Commissioner argues two rationales supplied by the ALJ "provide substantial evidence [that] support[s] the ALJ's assessment" of Adame's testimony. Def.'s Br. at 4–10. Notably, Adame does not challenge these assertions in her opening brief and declined to file a reply brief addressing the Commissioner's arguments. First, the Commissioner directs the court to the ALJ's finding that Adame left her job for reasons other than disability. Tr. 17. An ALJ may disregard subjective pain testimony where the claimant stopped working due reasons other than her alleged disability. *Carroll v. Colvin*, No. 6:13-cv-001189-PK, 2014 WL 4102314, at *7 (D. Or. Aug. 18, 2014) (citing *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (finding that the ALJ properly rejected testimony of claimant who left job for reasons other than injury)).

This assertion, however, is unsupported by the record. A thorough review of the transcript of the administrative hearing reveals Adame left her previous job because her symptoms caused frequent absenteeism, testifying she was let go "because [of] poor attendance" due to her pain. Tr. 34–35. Although an ALJ may properly disregard pain testimony where the claimant stopped working due to reasons *other than* her alleged disability, this was not such an instance because Adame was terminated for reasons *directly related* to her alleged disability—namely pain. *Id.* Thus, this was not a proper rationale to find her testimony less credible. [4]

---

[4] The additional evidence to which the Commissioner directs the Court is unpersuasive. The Commissioner's assertion that there is "nothing in the record to suggest" that Adame reporting to her doctor she was "laid-off" because of her impairments is flatly contradicted by Adame's testimony at the hearing. *See* Tr. 35 (asked by the ALJ why she was missing work, Adame responded: "Because I was in pain. My back was hurting, or I was seeing a chiropractor.") The same reasoning holds true regarding her use of the term "laid off" on her function reports. It is clear to the Court that Adame's use of the phrase "laid off," in context, conveyed termination as a result of her absenteeism due to her alleged symptoms.

The Commissioner next argues that the ALJ permissibly discounted Adame's testimony because she found her pain was "controlled . . . with over-the-counter medication." Def.'s Br. at 7. Evidence of a favorable response to conservative treatment—including the effective "use of anti-inflammatory medication"—can undermine a claimant's report of disabling pain. *See Tommasetti*, 533 F.3d at 1040. Here, the ALJ identified Dr. Davenport's treatment note reporting that Adame's pain was effectively controlled with ibuprofen only "when necessary." Tr. 18 (citing Tr. 390). Indeed, Dr. Davenport consistently reported that Adame's pain was controlled with conservative treatment of over-the-counter pain medication. *See, e.g.,* Tr. 425 (March 2014: reporting "sporadic" use of Motrin and Tylenol and noting orthopedist's recommendation of conservative treatment); Tr. 404–05 (August 2014: ordering "continue[d] ibuprofen" for osteoarthritis); Tr. 441 (January 2015) (same). [5]

In sum, because the ALJ provided a permissible clear and convincing rationale to discount Adame's symptom testimony, the overall credibility decision is supported by substantial evidence and should be upheld. [6] *See Batson*, 359 F.3d at 1197; *see also Carmickle v. Comm'r, Soc. Sec.*

---

[5] The Court notes that an independent review of the record reveals that, during an August 2014 appointment, Dr. Davenport prescribed a "one-time supply" of hydrocodone-acetaminophen. Tr. 405. However, the bulk of the record evidence indicates over-the-counter medication proved effective and the ALJ's conclusion in weighing the medical evidence is a rational interpretation of that evidence. *See* Tr. 390, 397, 405, 425, 441. "Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Similarly, the remainder of Adame's credibility arguments fail because they consist primarily of her own interpretation of her subjective symptom allegations and the medical evidence. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1009 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

[6] Adame also takes issue with the ALJ noting her caring for her "special needs granddaughter." Pl.'s Br. at 10–11. The ALJ discussed Adame's care for her granddaughter in two sections of her decision. The first occurred at step two, while evaluating whether Adame's

*Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error in one reason for discounting credibility is harmless where an ALJ's "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record").

## II. Amended Onset Date

Adame argues the ALJ erred in failing to acknowledge her amended onset date. Pl.'s Br. at 6–7. At the hearing, Adame amended her onset date from July 1, 2011, to May 1, 2012, explaining she had received unemployment insurance benefits through April 2012. Adame also argues that the ALJ, who at the hearing stated she would not consider the unemployment benefits as evidence of substantial gainful employment, noted in her decision "that acceptance of such benefits generally involves acknowledgment that the beneficiary is both willing and able to work." Tr. 13. Thus, argues Adame, the ALJ was "clearly influenced by the fact that [Adame] received unemployment benefits . . . despite the fact that she had amended" her onset date to avoid "the issue of her having accepted unemployment benefits during a period when she was seeking employment and willing to work." Pl.'s Br. at 6.

The Commissioner responds arguing that, beyond mentioning Adame's receipt of unemployment benefits, the ALJ "did not discuss the unemployment benefits in her credibility

---

generalized anxiety disorder and major depressive disorder equaled a listing; the ALJ analyzed those impairments in accordance with the applicable functional areas outlined in 20 C.F.R. § Pt. 404, Subpt. P, App. 1—including her activities of daily living. The ALJ explained that her impairments did not "cause more than minimal limitation" in Adame's "ability to perform basic mental work and therefore [were not] severe" based, in part, on her finding regarding Adame's activities of daily living. Tr. 14. Thus, the ALJ did not rely on this rationale in making her credibility determination three pages later. *See* Tr. 14–16. The ALJ next discussed Adame's care for her granddaughter in "giving partial weight" to the lay testimony of Adame's son, Erick Adame—a finding Adame does not now contest. Tr. 19. Thus, the ALJ did not rely on this rationale in making her credibility determination, and, therefore, Adame's argument is misplaced. For these reasons, the ALJ also did not rely on a negative activities of daily living finding in evaluating Adame's credibility, and to the extent Adame's briefing could be construed to challenge such a finding, the argument should fail.

finding." Def.'s Br. at 3. Moreover, the Commissioner argues, even if the ALJ considered the fact Adame received unemployment benefits, any error was harmless because the ALJ provided other permissible reasons for finding Adame not credible. *Id.* at 3–4.

"The decision of the ALJ will not be reversed for errors that are harmless." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (quoting *Burch*, 400 F.3d at 679). However, a reviewing court cannot consider an error harmless, "unless it can confidently conclude that no reasonable ALJ . . . could have reached a different conclusion." *Id.* at 1056. In other words, legal errors are harmless only if they are inconsequential to the non-disability decision. *Id.* at 1055. Here, although the ALJ erred in failing to correct Adame's amended onset date, and in noting that she had received benefits in the past, the error was harmless for two reasons. First, on the face of the ALJ's decision it is apparent the ALJ did not rely on Adame's receipt of unemployment benefits in assessing Adame's credibility. Tr. 16. Indeed, that determination is separated by three pages from the ALJ's observation that Adame had received unemployment benefits in making her step one determination. Notably, the ALJ resolved step one in Adame's favor. Second, the ALJ provided a legally permissible rationale, as discussed above, for finding Adame "not entirely credible." Thus, even if the ALJ was "influenced by the fact" that Adame had received unemployment benefits, Pl.'s Br. at 6, the Court should find any error by the ALJ was "inconsequential to the ultimate nondisablity determination," *Stout*, 454 F.3d at 1055, and, therefore, harmless.

Adame also asserts that at the time of her amended onset date she "was eight months from aging into a different age category; that would potentially have affected the application of the Medical-Vocational rules to her claim." Pl.'s Br. at 6–7. However, beyond generally assigning error, Adame fails to articulate this claim of error with specificity, and the Court declines to

manufacture an argument for her. *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (citation omitted) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.").[7] The Court should find this argument lacks merit.

## III. Step Two Determination

Adame assigns error to the ALJ's failure to find Adame's chronic pain and obstructive sleep apnea severe at step two. Pl.'s Br. at 7–8. The Commissioner responds that Adame's sleep apnea and chronic pain were not medically determinable, and, therefore, the ALJ did not err in not including them among the impairments she found severe at step two. At step two, the ALJ determines whether the claimant has an impairment that is medically determinable and severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. SSR 96–4p, *available at* 1996 WL 374187; 20 C.F.R. §§ 404.1513(a), 416.913(a). Additionally, the

---

[7] The same is true for Adame's vague challenge to the weighing of the medical evidence. Without directing the Court to the proper legal standard to challenge the ALJ's weighing of the medical evidence, Adame asserts that Dr. Davenport's opinion "provides consideration of the effects of chronic pain . . . which the other doctors did not provide." Pl.'s Br. at 15. To properly reject the contradicted opinion of a treating physician an ALJ must provide specific, legitimate reasons supported by substantial evidence. *See generally Garrison*, 759 F.3 at 1012. Even if Adame had cited the proper legal standard, the argument fails. First, the ALJ articulated a rationale that passes muster under the specific, legitimate standard for assigning only "partial" weight to Dr. Davenport's opinion: the opinion was internally inconsistent because Dr. Davenport's conclusion that Adame could sit only two hours of an eight hour work day contradicted his conclusion that Adame retained the ability operate a motor vehicle "constantly." Tr. 19 (quoting Tr. 490); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (explaining that internal contradiction is a specific, legitimate reason for rejecting a treating physician's opinion). Second, as discussed below in Section III.B., the ALJ gave "significant" weight to the medical opinion evidence that "reasonably account[ed] for [Adame's] chronic pain symptoms." Tr. 18. Indeed, the RFC included, in many respects, more limitations than contained in Dr. Davenport's opinion. *Compare* Tr. 15 (ALJ's RFC limiting Adame to standing and or walking no more than *two hours* of an eight hour work day), *with* Tr. 489 (Dr. Davenport opinion limiting Adame to standing and or walking no more than *four hours* of an eight hour work day) (emphasis added).

impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909. An impairment is severe if it "significantly limit[s]" the claimant's ability to do basic work activities, which are defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521, 416.921. The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). Omissions at step two are harmless if the ALJ's subsequent evaluation considered the *effects* of the impairment omitted at step two. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

## A. Obstructive Sleep Apnea

Dr. Katsufumi diagnosed Adame with sleep apnea in December 2013 and recommended she use a CPAP machine. Tr. 480. At a follow up appointment three months later, Adame reported to Dr. Katsufumi that the CPAP machine had improved her sleep, resulting in increased energy during the day. Tr. 483. Adame directs the Court to an August 2014 treatment note during which she reported sleep disturbances, arguing she suffered from "ongoing complaints with sleep." Pl.'s Br. at 7 (citing Tr. 403). A close reading of that treatment note, however, reveals no mention of sleep apnea. *Id.* Indeed, the cause of the sleep disturbance at that appointment was shoulder pain. *Id.* ("She states that she has a hard time sleeping on the shoulder.").

Although diagnosed by an acceptable medical source, the record reflects that Adame's sleep apnea was well controlled and did not significantly limit her ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.921. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). As such, the Court

should find Adame's obstructive sleep apnea was not medically determinable and, therefore, the ALJ did not err by not including it among the severe impairments she found at step two.

**B. Chronic Pain**

Adame asserts that the ALJ should have included "chronic pain" as a severe impairment. Pl.'s Br. at 7. As noted, the ALJ found Adame has the severe impairments of "degenerative disc disease of the cervical and lumbar spine; osteoarthritis of the hips and knees; morbid obesity; and right eye vision loss." Tr. 14.

Adame neglected, however, to address how the ALJ's alleged error in assessing her severe impairments at step two was harmful and any such error is not apparent to this Court. *See generally* Pl.'s Br.; *see also McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) (party seeking reversal bears the burden of establishing how the alleged error was harmful). In any event, the record does not indicate that Adame's chronic pain resulted in limitations discrete from the impairments the ALJ found severe. Indeed, the ALJ gave "significant weight" to medical opinion evidence—which Adame does not properly challenge—that "account[ed] for [Adame's] *chronic pain symptoms*." Tr. 18 (emphasis added).

Even assuming *arguendo* the ALJ erred, because the ALJ's sequential evaluation properly considered the effects of all of plaintiff's alleged symptoms—specifically chronic pain—any purported error at step two was harmless. *Burch*, 400 F.3d at 682–83 (explaining that any error in omitting an impairment from the severe impairments at step two is harmless where step two is resolved in claimant's favor); *see also Hase v. Colvin*, 207 F. Supp. 3d 1174, 1180 (D. Or. 2016). Here, the ALJ resolved step two in Adame's favor and explicitly considered the effects of her chronic pain as it related to the impairments that the ALJ did find severe. *See, e.g.,* Tr. 16 ("In assessing [Adame's] residual functional capacity, I have considered [Adame's] testimony

regarding pain and discomfort."); Tr. 17 ("[Complaints of severe bilateral hip and knee pain] when viewed in combination with evidence of a degenerative lumbar condition . . . reasonably justifies certain exertional limitations due to chronic pain."). As such, the ALJ's decision should be affirmed as to this issue. *Lewis*, 498 F.3d 911.

## IV. RFC Analysis

Adame contends that the Commissioner erred in crafting her RFC. Pl.'s Br. at 16–18. The ALJ has the responsibility of determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). The RFC is the "most [a claimant] can still do despite [the claimant's] limitations," and is "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is used at step four of the sequential analysis to determine if the claimant is able to perform past relevant work, and at step five to determine if the claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a), 416.920(a). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). The Court must uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss*, 427 F.3d at 1217.

Adame, however, essentially restates arguments she has already made. She again attacks the ALJ's credibility determination arguing the ALJ failed to properly evaluate her symptom testimony—and lay witness testimony, which she did not challenge—in accordance with the regulations mandate to consider a claimant's capacity for sustained, regular and continuing performance of work. However, reviewing courts presume that ALJs "know the law and apply it in making their decisions," *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072 n.3 (9th

Cir. 2010), and the ALJ properly found her statements regarding her symptoms "not entirely credible" based upon her conservative treatment that controlled her pain through over-the-counter anti-inflammatory medication. Tr. 16–17; *see supra* at 13–16.

Adame next asserts that the ALJ's depiction of Adame was not "accurate, detailed, and supported by the medical record," citing *Tacket v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Pl.'s Br. at 17–18. She again asserts her previously made and unpersuasive arguments. For example, she again asserts that not including obstructive sleep apnea and chronic pain among Adame's severe impairments resulted "in an inaccurate evaluation of the record." Pl.'s Br. at 18. As discussed above, however, Adame's sleep apnea was not severe because it did not significantly limit her ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.921; *see supra* at 19–21. Similarly, as discussed above, the ALJ specifically considered the effects of Adame's chronic pain; and, even if the ALJ erred failing to explicitly list chronic pain among Adame's severe impairments, the error was harmless precisely because it is clear from the ALJ's decision she considered the effects of Adame's chronic pain. *See Burch*, 400 F.3d at 682–83; Tr. 16–17; *see supra* at 21. Adame echoes her assertion that the ALJ improperly discredited her testimony using activities of daily living; however, as discussed *supra* at fn.6, the ALJ did not rely on Adame's activities of daily living in her credibility analysis. Finally, Adame's general assertions regarding the consistency of her treating physician's opinion—which the ALJ properly assigned only partial weight—with the medical record fails to direct the court to relevant regulations or case law or assign specific error to the ALJ's weighing of the medical evidence. *See generally Greenwood*, 28 F.3d at 977. Indeed, as discussed above, Adame's treating physician's opinion was less limiting in many respects than the RFC the ALJ adopted.

In sum, the additional limitations that Adame argues were missing from the hypothetical and RFC were, as discussed, properly evaluated by the ALJ. Thus, her arguments should fail. In crafting Adame's RFC, the ALJ included all of the limitations supported by substantial evidence in the record, and by extension the dispositive hypothetical to the VE. *Osenbrock*, 240 F.3d 1163–65. Based on the testimony of the VE, who testified Adame could return to her past relevant work, the ALJ reasonably concluded Adame could perform her past relevant work. Tr. 51–55. Accordingly, the Court should uphold the ALJ's decision.[8]

///

///

///

///

///

///

///

///

///

///

///

///

---

[8] Because I conclude for the reasons contained herein that the Court should affirm the ALJ's decision because she applied proper legal standards and her findings are supported by substantial evidence in the record, I decline to address Adame's argument regarding the appropriate type of remand. *See* 42 U.S.C. § 405(g); *see also Batson*, 359 F.3d at 1193.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying Adame's application for disability insurance benefits and supplemental security income should be AFFIRMED. A final judgement should be entered.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 29th day of November, 2017.

Honorable Paul Papak
United States Magistrate Judge